389 So.2d 1133 (1980)
Lowana Czahajda DeVILLIER, Plaintiff-Appellee,
v.
HIGHLANDS INSURANCE COMPANY, Defendant-Appellant.
No. 7837.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1980.
*1134 Davidson, Meaux, Sonnier & Roy, L. Lane Roy, Lafayette, for defendant-appellant-appellee.
Morrow & Morrow, J. Michael Morrow, Opelousas, for plaintiff-appellee-appellant.
Hudson, Potts & Bernstein, Ben R. Hanchey, Monroe, for intervenor-appellee-appellant.
Before CULPEPPER, DOMENGEAUX and CUTRER, JJ.
CUTRER, Judge.
This is a suit by the widow and surviving children of Charles DeVillier for workmen's compensation benefits, medical expenses, penalties and attorney's fees arising out of injuries received by DeVillier in an automobile accident on December 22, 1978. DeVillier died on January 22, 1979 as a result of the accidental injuries.
*1135 The suit was filed by Mrs. Lowana DeVillier against Highlands Insurance Company (Highlands). Highlands was the workmen's compensation insurer of Movable Homes, Inc. (Movable). DeVillier was president and manager of Movable at the time of the accident. Included in the suit against Highlands is a claim for medical expenses in the amount of $38,012.95 which had been paid by Prudential Insurance Company of America (Prudential).
Prudential had issued a group health and life policy to Movable affording hospitalization and medical coverage for Movable's employees. This policy excluded any claims that were subject to workmen's compensation payments. Prudential received information that DeVillier's injuries were not work related and paid $38,012.95 in medical expenses that had been incurred by DeVillier.
Prudential intervened[1] in the suit seeking judgment against Highlands or, in the alternative, against Mrs. DeVillier for the $38,012.95 allegedly paid in error.
The trial court rendered judgment in favor of Mrs. DeVillier for workmen's compensation benefits, all medical expenses, including those paid by Prudential, plus penalties and attorney's fees. The court also found that Prudential was entitled to reimbursement from Mrs. DeVillier for its claim. Highlands and Prudential appeal. Plaintiff answered the appeal seeking an increase in attorney's fees. We affirm.
The issues herein presented are: (1) Whether Mr. DeVillier's injuries arose out of and in the course of his employment; (2) whether Prudential is entitled to reimbursement, and if so, from whom, Mrs. DeVillier or directly from Highlands; and (3) was the trial court correct in assessing penalties and attorney's fees, and if so, whether the attorney's fees are in the proper amount.

COURSE AND SCOPE OF EMPLOYMENT
Highlands urges that DeVillier's accidental injuries and death did not arise out of and in the course of employment. The issue of "arising out of and in the course of employment" was recently presented to this court in the case of Vickers v. Continental Southern Lines, Inc., 383 So.2d 80 (La.App. 3rd Cir. 1980). This court held that, where a bus driver was required by his employer to get eight hours of rest and, when he was struck by a vehicle as he was walking from the bus station to a motel at which the employer provided free accommodations, said employee was injured in an accident which arose out of and in the course of his employment. In arriving at this conclusion, this court made the following observation:
"R.S. 23:1031, the applicable statute, provides in pertinent part:
`If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.'

"In Lewis v. Bellow, 212 So.2d 540 (La. App. 3rd Cir. 1968), this court stated:

`An employee protected by the Louisiana statute is entitled to receive workmen's compensation if disabled "by accident arising out of and in the course of his employment." LSA-R.S. 23:1031. In Kern v. Southport Mill. 174 La. 432, 141 So. 19, 21 (1932), a lead case, our Supreme Court stated that, for purposes of the workmen's compensation act, (a) "an accident occurs in the course of an employment when it takes place during the time of such employment", and (b) it arises out of the employment when it is "the result of some risk to which the employee is subjected in the course of his employment to which he would not have been subjected had he not been so employed." (Italics ours)'

* * * * * *
*1136 `. . . Protection of the compensation act extends not only to disabilities incurred in the performance of employment duties, but also to activities reasonably connected with or incidental to them. Bates v. Gulf States Utilities Co., 249 La. 1087, 193 So.2d 255 (1966).'
With these principles in mind, we examine the facts of the case to determine whether DeVillier's accident "arose out of and in the course of employment."
Charles Wayne DeVillier was president, owner and manager of Movable. Movable was engaged in the construction of conventional homes at its yard in Eunice, Louisiana. The houses were sold in the Eunice and Lafayette areas. When a sale was made, the house would be transported to the customer's lot where it was set in place.
DeVillier's work was varied and unstructured. Far from being limited to ordinary office hours, he frequently worked into the night and traveled to and from future home sites. On the day of the accident, December 22, 1978, DeVillier had given a bar-b-que for his employees and some sales representatives of Lafayette. Among those attending were Sid Turner and Nikki Potier. Sid Turner was a Lafayette realtor and Nikki Potier worked with Turner. Later that afternoon, DeVillier, along with Turner and Nikki Potier, traveled to Lafayette from the Movable office in Eunice and there discussed business arrangements between Movable, Sid Turner and Nikki Potier. After that meeting, DeVillier gave Ms. Potier a ride to her mother's house in Sunset. Shortly after leaving Nikki Potier, the company jeep he was driving overturned, causing serious injuries to DeVillier.
Uncontradicted testimony establishes that the route being traveled by DeVillier, while not the shortest route to his home, was the route to a lot onto which Movable was to place a house. The testimony of Nikki Potier discloses that he had never before been to this particular lot and that she, the last person to see Mr. DeVillier before the crash, explained the location of the lot to him before he dropped her off at her mother's home. It was his established practice to ride the backroads between the future location of a house and Movable's construction site so that he could determine if there were any obstacles to moving a house to the desired location.
Other testimony establishes that the residence of a Mr. Domingue, who was indebted to Movable, was in the vicinity of the crash and that Mr. DeVillier had indicated an intent to attempt to collect this overdue debt. Thus, two business motives existed to place the decedent at the scene of the accident. With these undisputed facts before him, the trial judge concluded that the evidence was sufficient to prove that the accident arose out of and was in the course of employment of DeVillier. The evidence clearly supports this conclusion.
The duties that were being attended to by DeVillier on the fatal evening in question were duties reasonably connected with his employment. Further, the necessity of extensive travel on secondary roads, to carry out his duties with Movable, exposed him to a risk that he would not have otherwise been exposed to had he not been so employed. Since the accident and death arose out of and in the course of DeVillier's employment, benefits are due his surviving dependents.

PRUDENTIAL'S INTERVENTION
Highlands denies that Prudential is entitled to any restitution of the $38,012.95. Highlands bases its contention on two arguments: (1) Prudential had a natural obligation to pay the medical expenses; and (2) Prudential was negligent in making the payments.
Highlands' argument that Prudential had a natural obligation to pay the medical expenses is without merit. DeVillier's accidental injuries were clearly excluded by the Prudential policy. This is not disputed. There was no obligation imposed upon Prudential to make any payments, either by contract or by natural obligation. The case of Muse v. St. Paul Fire and Marine Insurance Company, 328 So.2d 698 (La.App. 1st Cir. 1976), cited by Highlands, *1137 is inapposite. In that case the court held that the obligation of an indigent, to pay a charity hospital a fair cost of medical services rendered to him, constituted a "natural obligation" barring a recovery by the indigent from his attorney who mistakenly paid said hospital expenses from the proceeds of a disability policy. In the case at hand, Prudential received no benefits from the services rendered by the hospitals or doctors as did the indigent in Muse, thus, no natural obligation can be imposed upon Prudential.
Highlands' claim, that Prudential was barred from any recovery due to its negligent payment, is also without merit. As a matter of fact, Prudential was not negligent in its payment.
Donald Sattler, Agent of Prudential in Eunice, was well acquainted with the DeVillier family. The day following the accident, Sattler was informed of DeVillier's automobile accident by DeVillier's brother. Sattler later filled out the necessary claim forms to be sent to Prudential. He had received no information, during the interval between the date of the accident and the date of the forms, that the accident was work related. In filling out the claim forms, Sattler noted that the accident was not work related. The form was sent to Mrs. DeVillier's attorney where they were signed by Mrs. DeVillier. The medical expenses were paid by Prudential on March 5, 1979.
The claim against Prudential was handled as a routine matter without unnecessary delay and with no knowledge that the accident was work related and excluded from the policy. We cannot label such actions as negligent acts. Furthermore, the jurisprudence has not treated negligence as a bar to recovery of a payment which was paid in error. In the case of Central Surety & Ins. Corp. v. Corbello, 74 So.2d 341 (La.App. 1st Cir. 1954), the court held as follows:

"This action, as we view it, is one which is sanctioned by Articles 2301 et seq. of the LSA-Civil Code and particularly Art. 2302, which provides that `He who has paid through mistake, believing himself a debtor, may reclaim what he has paid'. It is obvious, as we have previously pointed out, that payment here was made through error and we fail to see how the question of negligence on the plaintiff's part in making payment should control his right of recovery. The defendant has admittedly received a large sum of money which, as we have found, was not due him. There is nothing in the record which would tend to show that he was injured or damaged, in any way as the result of receiving the money. Under these circumstances we do not think he should be allowed to capitalize upon and be enriched by the error made by the plaintiff." 74 So.2d 344.
In the recent case of Dynamic Exploration v. Sugar Bowl Gas Corp., 367 So.2d 18 (La.App. 1st Cir. 1978), writ den., 368 So.2d 142 (La., 1979), the court held as follows:

"Additionally, we adhere to what we believe to be the proper interpretation of the Code and the one which a majority of cases follow, namely that negligence per se is not a bar to recovery for the payment of a thing not due. Central Surety & Ins. Corp. v. Corbello. 74 So.2d 341 (La.App. 1st Cir. 1954); Continental Oil Company v. Jones, 191 So.2d 895 (La.App. 1st Cir. 1966)." 367 So.2d 24.
Under this jurisprudence, even if Prudential had been negligent in its payment, such negligence would not be a bar to Prudential's claim for payment in error.
Prudential argues on appeal that the trial court erred by denying Prudential's request for judgment against Highlands. Prudential rests its argument on LSA-C.C. art. 2310, which reads as follows:
"He who, through mistake has paid the debt of another to whom he believed himself indebted, has a claim to restitution from the creditor.

"This right ceases if, in consequence of the payment, the creditor has destroyed or parted with his title, but the recourse still remains to the person paying against the true debtor." (Emphasis ours)
Counsel for Prudential argues that Highlands was the "true debtor" in that Highlands *1138 owed Mrs. DeVillier her husband's medical expenses. Prudential contends that Highlands being the "true debtor," Prudential has recourse against Highlands as set forth in the last line of the article above. We disagree.
The "true debtor" under this article would be Mrs. DeVillier, the survivor of Charles DeVillier. The "creditors" would be the hospitals and doctors. Workmen's compensation insurance coverage creates an obligation for the insurer (Highlands) to pay such expenses on the behalf of the "true debtor" (Mrs. DeVillier). Thus, under this article, Prudential has recourse against Mrs. DeVillier, but not against Highlands for the recovery of the medical expenses paid by mistake.

PENALTIES AND ATTORNEY'S FEES
The trial court found that statutory penalties and attorney's fees were due. It applied penalties to the medical and funeral expenses and to compensation benefits for the period up until May 25, 1979. We agree. Highlands claims this was in error in that there existed a "clear, substantial and bona fide dispute concerning (1) whether. . . the accident itself was in the course of or arising out of Charles Wayne DeVillier's employment; and (2) the legal issue of reimbursement existing between Highlands and Prudential."
We have previously reviewed the undisputed evidence which clearly reflected that DeVillier was acting in the interest of Movable when the accidental injuries occurred. Within five weeks of the date of the filing of the suit, Highlands had taken the depositions of Nikki Potier and Mrs. DeVillier, whose testimony reflected that DeVillier was on business for Movable at the time of the accident. Highlands presented no testimony to dispute the testimony of plaintiff's witnesses. This issue presented no serious dispute of fact as contended by Highlands.
Further, on December 28, 1978, an employer's report was mailed to Highlands reporting the occurrence of the accident and that the accident occurred while DeVillier was "on a business trip." This report was received by Highlands on January 3, 1979. This suit was filed on January 29, 1979. Highlands paid the balance due at the two hospitals; that is, the amount that had not been paid by Prudential. Some of the doctor bills were also paid along with funeral expenses. Compensation payments were also brought up to date. These payments were received by the attorney for Mrs. DeVillier on May 3, 1979. The remaining doctor bills were later paid, the last one being paid in September 1979. Several demands were made on Highlands before the last bills were paid. Highlands' delay in paying the medical bills, some of which were for as long as eight months after suit was filed, is without legal excuse or justification and must be classified as arbitrary.
The fact that a dispute existed between Highlands and Prudential as to the payment of medical expenses does not justify Highlands' refusal to pay the sums paid by Prudential through error. Highlands has a statutory obligation to pay the medical expenses. The fact that Prudential had paid such expenses through error and then made demand upon Mrs. DeVillier for the return of same, does not diminish Highlands' obligation to Mrs. DeVillier. Their refusal to pay the obligation to Mrs. DeVillier was arbitrary. Mrs. DeVillier is entitled to penalties and attorney's fees.
The trial court awarded $5,000.00 attorney's fees and plaintiff's counsel seeks an increase in same. We have considered the record of this case and have concluded that the $5,000.00 awarded by the trial court as attorney's fees is proper and sufficient in this case. This would include attorney's fees for this appeal. See Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3rd Cir. 1979), writ den., 379 So.2d 1102 (La. 1980); also, the recent case of Harkins v. Continental Oil Co., 385 So.2d 1216 (La.App. 3rd Cir. 1980).
For the above and foregoing reasons, the judgment of the trial court is affirmed, with Highlands Insurance Company and Prudential Insurance Company of America to each pay 50% of the costs of this appeal.
AFFIRMED.
NOTES
[1] No issue is made as to whether an intervention by Prudential was the proper procedure to be followed. Thus, we do not pass on same.